## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

REBECCA MARTINEZ,

      Plaintiff,

v.                                                                          Civ. No. 19-889 JCH/GJF

CHRISTOPHER JAMES PADILLA et al.,

      Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      This matter is before the Court on Defendants John Sanchez and Robert Gonzales'
("Supervisory Defendants") "Motion for Judgment on the Pleadings" ("Motion"). ECF 24. The
Motion seeks judgment on Count III of Plaintiff's Complaint.[1]  After careful consideration of the
pertinent law and the parties' briefing, the Court recommends that the Motion be **GRANTED**.
The Court's reasoning follows below.

## I.   FACTUAL BACKGROUND[2]

      During the relevant period, Plaintiff Rebecca Martinez was incarcerated at the Springer
Correctional Facility ("SCC") in Springer, New Mexico, for armed robbery and identity theft.
Compl. ₱ 1; Mot. 2.  While there, Plaintiff worked in the prison's kitchen and was supervised by
Defendant Padilla, a male security officer who is not a party to this Motion.  *Id.* ₱₱ 2, 10, 11.
During Plaintiff's shifts, Defendant Padilla subjected her to numerous inappropriate sexual

---

[1] Defendants Sanchez and Gonzales also request judgment on Count IV.  That claim, however, has subsequently
been dismissed with prejudice.  *See* ECF 32 ("Stipulation of Dismissal with Prejudice of Count IV of Plaintiff's
Complaint Against Padilla, Gonzales, and Sanchez").

[2] The Court accepts as true the factual allegations in the Complaint for the purposes of deciding a motion to dismiss
or a motion for judgment on the pleadings.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007).  The Court does not, however, accept as true any legal conclusions within the Complaint.
*See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint
is inapplicable to legal conclusions.").

1

comments and a nonconsensual sexual touching of her person.  *Id*. ¶¶ 13-18.  On one occasion, while Plaintiff was in the kitchen's walk-in refrigerator, Defendant Padilla blocked the exit and coerced Plaintiff, through threats of write-ups and lost good time credit, to show him her breasts. *Id*.  ¶¶ 19-28.

After this event, Defendant Padilla continued to harass Plaintiff by uttering sexual vulgarities and expressing his desire to have intercourse with her.  *Id*. ¶¶   30-32.  Defendant Padilla's conduct ultimately came to a head in early March 2017 when, while Plaintiff was in his office retrieving a tool for the kitchen, he rubbed his clothed genital area on her hand.  *Id*. ¶¶ 33-36.  Defendant Padilla then threatened Plaintiff with repercussions if she notified anyone of this interaction and boasted that, even if she did report him, no one would believe her.  *Id*. ¶¶ 37-38. Plaintiff did not immediately report the incident.  *Id*. ¶¶ 39-43.

Shortly after this event, Defendant Padilla promoted to Maintenance Supervisor and Plaintiff was discharged from the kitchen for unrelated health reasons.  *Id*. ¶¶ 44-48.  After being discharged, and thus no longer under Defendant Padilla's direct supervision, Plaintiff attempted to report his actions through the Prison Rape Elimination Act hotline—but the hotline did not work. *Id*. ¶¶ 49-51.  So on March 29, 2017, Plaintiff reported Defendant Padilla to two Lieutenant Correctional Officers.   *Id*. ¶ 52.  Plaintiff's Complaint further alleges that, approximately five months after the New Mexico Department of Public Safety investigated Plaintiff's case, the Department also investigated another allegation lodged against Defendant Padilla by another SCC inmate. *Id*. ¶ 53-54.  According to Plaintiff, SCC still employs Defendant Padilla.  *Id*. ¶ 57.

Next, the Complaint details the events that occurred after Plaintiff reported Defendant Padilla.  According to Plaintiff, the morning after she reported Defendant Padilla, fellow inmates already knew of the allegation and began threatening her with physical violence.  *Id*. ¶¶ 58-59.  In

response to these threats, Plaintiff notified Defendant Biddle, the Deputy Warden during the relevant time period who also is not a party to this Motion. *Id.* ¶ 60. Defendant Biddle then instructed some inmates to protect Plaintiff and notified the mental health counselor at the facility. *Id.* ¶ 61. Plaintiff spoke with the mental health counselor and was placed on a mental health watch. *Id.* ¶ 63.

After Plaintiff's incidents with Defendant Padilla, but before her report to Defendant Biddle, Plaintiff received a write up for failing to report to her job on time. *Id.* ¶ 64. An SCC hearing officer dismissed this write-up, but two days after Plaintiff first reported Defendant Padilla, Defendant Biddle reinstated the infraction. *Id.* ¶ 68. Plaintiff alleges this was in retaliation for the allegation she made against Defendant Padilla. *Id.* ¶ 71. Ultimately, on March 31, 2017, Plaintiff was transferred to the Western New Mexico Correctional Facility. *Id.* ¶ 72.

The Complaint further alleges that, "upon information and belief," (1) "Defendants have fostered a culture that emboldens and empowers officers to use their positions of power to sexually abuse women in [] custody," (2) "assault by correctional officers" goes unreported, (3) even after reporting assaults "women are often forced to remain in close contact and under the control of their abusers," and (4) victims of sexual assault in the [New Mexico Department of Corrections] are often themselves punished" for making allegations against corrections officers. *Id.* ¶¶ 94-97. In addition, the complaint alleges that "Defendants" fostered a sexually abusive culture by:

a.   negligently hiring, training, supervising, and retaining correctional officers who commit violence, harassment, and abuse against women in NMCD custody;

b.   failing to maintain sufficient camera placement around SCC and, upon information and belief, by purposefully erasing or failing to preserve security footage from existing cameras;

c.   failing to properly screen correctional officers entering SCC, allowing them to bring special items to curry favor with certain prisoners;

> d.  failing to follow PREA protocols and procedures;
>
> e.  refusing to keep prisoners' PREA complaints and grievances confidential, leaving victims open to retaliation and further harassment from correctional officers and other prisoners; and
>
> f.  other acts and omissions in willful, deliberately indifferent, and/or reckless disregard of the constitutional rights of women in SCC custody.

*Id.* ¶ 100.

The Complaint goes on to allege that "numerous SCC officers have been investigated by the state police for sexual misconduct involving women prisoners" and that several other women have reported Defendant Padilla for misconduct in the two years since Plaintiff's allegation. *Id.* ¶¶ 102-03.  Finally, the complaint alleges that (1) "Defendants . . . refused to address and remedy the toxic culture" at SCC and (2) Defendant Sanchez's and Defendant Gonzales's acts and omissions were willful, wonton, deliberately indifferent, and in reckless disregard" of Plaintiff's rights. *Id.* ¶¶ 130, 132, 134.

## II.  LEGAL STANDARDS

### A.  Judgment on the Pleadings

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).  "[A] Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  When considering such a motion, a court must accept as true all well-pled factual allegations in the complaint, view them in the light most favorable to the nonmoving party, and draw all reasonable inferences in the favor of the nonmoving party.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

4

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

"[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When a defendant invokes the defense of qualified immunity at the motion to dismiss stage, a plaintiff shoulders a difficult burden.  "To nudge their claims across the line from conceivable to plausible, … plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (internal quotation and citation omitted).  Thus, it is not enough that a complaint adequately pleads facts that, if true, plausibly demonstrate a violation of a plaintiff's constitutional rights.  The complaint

must *also* plead facts sufficient to make it plausible that the constitutional right at issue was clearly established at the time the defendant did whatever he is alleged to have done.

### B.  Qualified Immunity

The defense of qualified immunity shields officials from civil liability as long as they do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)).  Qualified immunity also shields officials who have "reasonable, but mistaken beliefs" and operates to protect officials from the law's sometimes "hazy border[s]." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).  In sum, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Because of the burdens of litigation, issues of qualified immunity are best resolved at the "earliest possible stage of litigation." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit." *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010).  "Once a defendant raises qualified immunity, the plaintiff bears the burden to show that the defendant is not entitled to immunity." *Lincoln*, 880 F.3d at 537 (citing *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005)).

To overcome the defense of qualified immunity, a plaintiff must show that the defendant violated a constitutional or statutory right and that the violated right was clearly established at the time of the alleged unlawful activity. *Lincoln*, 880 F.3d at 537 (internal quotations omitted) (citing

*Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016)).[3]   For the law to be clearly established:

> [t]he contours of the constitutional right at issue must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  And the contours of a particular right are generally only sufficiently clear to put a reasonable official on notice if a plaintiff (1) identif[ies] an on-point Supreme Court or published Tenth Circuit decision, or (2) shows the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.

*Perry v. Durborow*, 892 F.3d 1116, 1122–23 (10th Cir. 2018) (quotations and citations omitted).

"A right is 'clearly established' when every "'reasonable official would [understand] that what he is doing violates that right.'"  *Lincoln*, 880 F.3d at 537 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  In other words, a court may conclude that a right was clearly established only if it "was sufficiently clear that a reasonable government officer *in the defendant's* shoes would understand that what he or she did violate that right."  *Casey v. West Las Vegas Independent School Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (emphasis added).  But courts cannot define the relevant constitutional right "at a high level of generality[;]" rather, the analysis must determine whether the "clearly established law . . . [is] particularized to the facts of the case."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation omitted).  Although, this inquiry "do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* at 551 (quoting *Mullenix*, 136 S. Ct. at 308) (internal quotations omitted).  "[T]he key is whether the *specific conduct* has been clearly established as a constitutional violation."  *Lincoln*, 880 F.3d at 537 (quoting *Mullenix*, 136 S.Ct. at 308) (emphasis added).

---

[3] For all practical purposes, this inquiry is indistinguishable from the inquiry the Court conducts in assessing a challenge under Federal Rule of Civil Procedure 12(b)(6) to the sufficiency of the complaint.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

## III.  ANALYSIS

### A.  Parties' Arguments

Defendants Sanchez and Gonzales assert that the factual allegations underpinning Count III fail to state a claim upon which relief can be granted because "Plaintiff's Complaint contains no specific allegations that, if true, would demonstrate that either [Defendants] *Gonzales or Sanchez* were aware of a risk that [Defendant] Padilla would violate Plaintiff's constitutional rights, much less that they ignored these risks." Mot. 10 (emphasis added).  In sum, Defendants Sanchez and Gonzales argue that the alleged facts, taken as true, do not establish that they acted with deliberate indifference.  In addition, Defendants argue that Plaintiff's "allegations are collective." *Id.*  That is, they assert that "the complaint [does not] make clear exactly *who* is alleged to have done *what to whom*."  Defendants Sanchez and Gonzales therefore contend that "they are left [without] fair notice as to the basis of the claims" brought against them.  *Id.* at 10-11 (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008)).

For her part, Plaintiff heavily relies on *Keith v. Koerner*, 843 F.3d 833 (10th Cir. 2016) to argue that "Defendants' Motion fails because the alleged facts in the instant matter relate so closely to *Keith*."  Resp. 7.  With regard to the collective allegations in the Complaint, Plaintiff argues that the "Complaint makes clear the list of alleged acts for which she seeks to hold Defendant Sanchez and Defendant Gonzales responsible."  *Id.* at 14 (relying on *Briggs v. Johnson*, 274 F. App'x 730 (10th Cir. 2008) (unpublished) for this proposition).  Lastly, Plaintiff argues that her Complaint sufficiently states a claim because, among other things, she alleges that "Defendants knowingly failed to follow" the Prison Rape Elimination Act ("PREA"), "failed to maintain sufficient camera placement," and "failed to properly screen corrections officers."  *Id.* at 8-9.

The Court, in its discretion, will begin its analysis with whether the Complaint provides fair notice to Defendants Sanchez and Gonzales.  The Court will then turn to *Keith* and determine whether

the Complaint adequately alleges deliberate indifference.  Lastly, the Court will address Plaintiff's specific arguments regarding the PREA, cameras, negligent hiring and training, and officer screening.

### B.  Count III Fails to State a Claim upon which Relief Can Be Granted

"The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement—to include 'reasonable measures to guarantee the safety of the inmates.'" *Gray v. Ade*, No. 19-7059, 2020 WL 3121012, at \*4 (10th Cir. June 12, 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  This includes a duty to protect inmates from sexual assault. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) ("[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards.").  A cognizable Eighth Amendment claim for failure to protect is comprised of two elements.  "[A]n inmate must show that [s]he is incarcerated under conditions posing a substantial risk of serious harm" and "the inmate must establish that the prison official has a sufficiently culpable state of mind, i.e., that he or she is deliberately indifferent to the inmate's health or safety." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (internal quotations and citations omitted).

Here, however, Plaintiff does not assert that any individual official on duty failed to protect her.  Rather, Plaintiff alleges that Defendants Sanchez and Gonzales are liable under a theory of supervisory liability as administrators of the correctional facility.  But § 1983 does not "authorize liability under a theory of respondeat superior." *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (claim brought under Fourteenth Amendment) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)).  Thus, in order to satisfy the first prong of the qualified immunity test, i.e., a constitutional violation, Plaintiff must demonstrate that Defendants Sanchez and Gonzales *personally* violated her constitutional rights. *See id.* (citing

*Keith v. Koerner*, 843 F.3d 833, 837 (10th Cir. 2016).[4]  This requires Plaintiff to establish an "affirmative link" between Defendants Sanchez and Gonzales and Defendant Padilla's conduct. *Id*. (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)). To demonstrate this "affirmative link," Plaintiff must establish three elements as to Defendants Sanchez and Gonzales: "(1) personal involvement; (2) causation, and (3) state of mind."  *Id*. (quoting *Schneider*, 717 F.3d at 767).

To adequately plead a violation of the Eighth Amendment right to be reasonably protected from sexual assault by subordinate corrections officers under a supervisory theory, Plaintiff must allege sufficient facts that make the following circumstances plausible:  (1) Defendants Sanchez and Gonzales were "responsible for but 'failed to create and enforce policies to protect'" her from the sexual assault.  *Id*. (quoting *Keith II*, 843 F.3d at 840); (2) Defendants Sanchez and Gonzales "set in motion a series of events that [they] knew or reasonably should have known would cause [corrections officers] to deprive [Plaintiff] of [her] constitutional rights," *id*. (quoting *Keith II*, 843 F.3d at 847); and (3) Defendants Sanchez and Gonzales possessed the "requisite state of mind" and "acted with deliberate indifference."  *Id*.  Deliberate indifference in turn requires Plaintiff to show "(1) that [Defendants Sanchez and Gonzales] [were] aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; (2) that [they] actually drew that inference; and (3) that [they were] aware of and failed to take reasonable steps to alleviate that risk."  *Id*. (quoting *Keith II*, 843 F.3d at 848).

---

[4] In the Tenth Circuit, a pretrial detainee's Due Process Clause rights parallel that of a convicted prisoner's Eighth Amendment rights: "Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment. In determining whether appellant's rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983."  *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)); *accord Perry*, 892 F.3d at 1121.  Therefore, the legal standards of those case are directly applicable here.

1.   *Plaintiff's Complaint Provides Fair Notice*

Defendants Sanchez and Gonzales argue that most, if not all, allegations made in the complaint are collective against all named defendants.  Mot. 9-11; Reply 7-9.  Specifically, they contend that because the Complaint does not "make clear exactly *who* is alleged to have done *what* to *whom*," Plaintiff does not "provide [them] with fair notice as the basis of the claims" brought against them as supervisors.  Reply 7 (emphasis in original) (quoting *Robbins*, 519 F.3d at 1249-50).  Plaintiff insists that *Robbins* is inapplicable to these facts.  Resp. 12-13.  Rather Plaintiff relies on *Briggs v. Johnson*, 274 F. App'x 730 (10th Cir. 2008) (unpublished) to establish that the Complaint placed Defendants Sanchez and Gonzales on notice of the alleged facts for which she seeks to hold them accountable.  *Id*. at 12-14. Plaintiff asserts that *Robbins* concerned different classes of Defendants, including an entity, where the instant allegations concern only individuals. *Id*. at 13.  In response, Defendants Sanchez and Gonzales assert that the defendants are in fact in separate classes (supervisors and correctional officers) and that the different legal theories required to impose liability on those classes make Plaintiff's collective allegations inappropriate.  Reply 7.

*Robbins* stemmed from the death of an eight-month-old infant.  519 F.3d at 1245.  The parents of that infant brought suit under § 1983 against the "State of Oklahoma Department of Human Services, five named employees of DHS in their individual capacities, ten unnamed employees of DHS in their individual capacities, [the owner-operator of a daycare center], and the [daycare center] . . . ."  *Id*. at 1246.  The complaint repeatedly referred to "the defendants" without associating specific acts to specific defendants.  *Id*. at 1250.  In fact, the first count grouped all defendants together.  *Id*.

The issue before the *Robbins* court was whether the "plaintiffs have adequately stated a claim on which relief may be granted and whether [defendants] are entitled to qualified immunity." *Id*. In finding that the plaintiffs' complaint failed to provide notice to the defendants, the court reasoned that "the allegedly tortious acts committed by [] the Director of DHS, [] the private owner and operator of the daycare where [the infant] was killed, and the individual social workers in Tahlequah, are entirely different in character and therefore are mistakenly grouped in a single allegation." *Id*. at 1250. The court did not:

> speculate, because the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants. Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.

*Id.*

The Tenth Circuit, however, reached a different conclusion regarding notice in *Briggs.*[5] There, the § 1983 suit again stemmed from the death of a child. That plaintiff filed claims against the Oklahoma Department of Human Services and three of its employees. *Briggs*, 274 F. App'x at 732. The court found that, "[i]n contrast to the complaint in *Robbins*, Briggs's allegation that Defendants discouraged the reporting of additional incidents of abuse is specific enough to give Defendants fair notice of the grounds on which he claims entitlement to relief." *Briggs*, 274 F. App'x at 736. Notably, the "complaint clearly name[d]" the individual capacity defendants as the individuals who allegedly discouraged the reporting of abuse. *Id*. It also clearly identified the individual capacity defendants "as the individuals who 'were repeatedly notified of injuries and/or abuse to Kelsey.'" *Id.*

---

[5] The district court decision denying the defendants' motion to dismiss relied on the now-overruled pleading standard set by *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). *See Briggs*, 274 F. App'x at 737 (McConnell, J., dissenting).

Here, Plaintiff's Complaint repeatedly makes allegations collectively against "Defendants" instead of isolating individual allegations to a corresponding defendant.  To be sure, out of the 151 paragraphs in the Complaint, aside from alleging that Defendants were acting in the course and scope of their duties, only four allegations mention either Defendants Sanchez or Gonzales by name.  And similar to *Robbins*, there are two classes of defendants, rank-and-file corrections officers and supervisors, each of which require different theories of liability.  For all of its deficiencies, the Complaint does isolate specific defendants by count.  For example, Count III is brought against Defendants Sanchez, Biddle, and Gonzales for failing to protect.  Moreover, Count III does make allegations, albeit in conclusory fashion against the individual named defendants. *See, e.g.,* Compl. ¶¶ 127 ("Defendants Sanchez, Biddle, and, and Gonzales violated [Plaintiff's] Eighth Amendment right to bodily integrity and freedom from cruel and unusual punishment when they failed to protect her from sexual harassment, abuse, coercion, and battery") 132 ("Defendant Sanchez's acts and omissions were willful, wanton, deliberately indifferent, and in reckless disregard of [Plaintiff's] constitutional rights" ) 134 ("Defendant Gonzales's acts and omissions were willful, wanton, deliberately indifferent, and in reckless disregard of [Plaintiff's] constitutional rights").  Thus, the Complaint is barely specific enough to identify the legal basis of Plaintiff's claims against Defendants Sanchez and Gonzales.

2. _Plaintiff Has Failed to Adequately Plead Deliberate Indifference_

Defendants argue here that the facts alleged fail to adequately allege that they acted with deliberate indifference. Mot. 10. Plaintiff argues that _Keith_ demonstrates otherwise. Resp. 7. The Court begins its analysis with _Keith_.[6]

In _Keith I_, an inmate at an all-female corrections facility brought a § 1983 claim, alleging violations of her Eighth Amendment rights by the former warden and subordinate corrections employees. 707 F.3d at 1187. In 2007, while incarcerated, the plaintiff engaged in unlawful sexual acts with a vocational training instructor and became pregnant. _Id_. The plaintiff alleged that the "[d]efendants created and allowed a policy or culture of sexual misconduct at [the corrections facility] which placed her at substantial risk of harm, failed to take reasonable measures to abate the culture of sexual misconduct, and were deliberately indifferent to this substantial risk of harm." _Id_. In support of her allegation, the plaintiff included with the complaint a "2010 Kansas Legislative Post Audit Report ("Audit Report") that contained multiple findings regarding the situation at [the corrections facility] during and subsequent to her incarceration." _Id_. In addition, the plaintiff alleged "facts indicating previous incidents of both sexual misconduct and undue familiarity, inconsistent disciplinary responses to such incidents, structural policy problems at TCF, and a lack of appropriate training programs." _Id_.

In response, the warden (and other defendants) moved to dismiss on qualified immunity grounds. The district court granted qualified immunity to all defendants except the warden (and

---

[6] However, the Court does not begin with the _Keith_ opinion on which Plaintiff relies, s_ee_ Resp. 7 (relying on _Keith v. Koerner_, 843 F.3d 833 (_Keith II_) (10th Cir. 2016)), because that decision reviewed a district court's granting of summary judgment. Rather, this Court will first focus on _Keith v. Koerner (Keith I)_, 707 F.3d 1185, 1189 (10th Cir. 2013), which reviews the district court's denial of a supervisor defendant's motion to dismiss. The Court is puzzled by Plaintiff's reliance on the 2016 decision. Defendants Sanchez and Gonzales argue that the Complaint fails to allege sufficient facts to establish _deliberate indifference_. As discussed below, the 2013 _Keith_ opinion deals exclusively with whether a complaint sufficiently pled deliberate indifference in the very same context we have here, sexual misconduct in an all-female prison and supervisory liability.

one other defendant against whom default judgment was entered).  *Id*.  In reaching its decision, the district court "noted that [the plaintiff] alleged facts that could tend to establish that [the warden] 'was responsible for managing [the corrections facility] and knew about multiple instances of sexual misconduct at [the facility] over a period of years, inconsistently disciplined corrections officers who engaged in prohibited sexual conduct with inmates and thus purportedly tolerated at least an informal policy which permitted sexual contact between prison staff and inmates." *Id*. at 1188 (quoting *Keith v. Werholtz*, 2012 WL 1059858, at *7 (D. Kan. Mar. 28, 2012)).

On appeal, the Tenth Circuit faced one question: "whether [the plaintiff] has alleged facts sufficient to support such a deliberate indifference violation by [the warden]." *Id*.  The warden argued on appeal that the complaint failed to plausibly plead deliberate indifference because  (1) the plaintiff "relies heavily on the Audit Report, created years after the events of which she complains and including events and statistics that post-date those events," (2)  when "applying a standard of objective reasonableness, the mere number of incidents is insufficient to demonstrate an unreasonable response to a substantial risk," (3) "the complaint omits the response of the Secretary of Corrections," (4) "the inconsistent discipline in the report deals with claims of undue familiarity, not sexual misconduct, and is not specific as to the time period," and (5) "the incidents relied upon *were* reported, investigated, and acted upon, demonstrating a reasonable response, and certainly not one that suggests deliberate indifference." *Id*. (emphasis in original).

In determining that the plaintiff "provided notice and nudged her claims beyond the conceivable to the plausible,"  the Tenth Circuit concluded that the "complaint refers to facts, primarily from the Audit Report, that could support a conclusion that [defendant] was aware of multiple incidents of unlawful sexual conduct at [the correctional facility]."  *Id* at 1189.

Specifically, the complaint "point[ed] to reports of at least 54 incidents of sexual misconduct and 33 incidents of undue familiarity *between 2005 and 2009* and to a *2005 lawsuit* over strip searches at [the correctional facility], suggesting that [defendant] may have had knowledge of these accounts." *Id.* (emphasis added).   In addition, the complaint (1) "allege[d] facts indicating that discipline in response to complaints of sexual misconduct and undue familiarity at [the correctional facility] was inconsistent," i.e, the complaint "points to the Audit Report which describes multiple failures to properly investigate allegations and to terminate employees when allegations *were substantiated*,"   and (2) "allege[d] facts that tend to show the existence of structural policy problems that contributed to the unlawful sexual conduct here . . . the Audit Report which determined that policy decisions—particularly decisions *not to address known problems* with the vocational training program and the insufficient use of cameras to monitor inmates and staff— made TCF 'ripe for staff misconduct.'"   *Id.* (emphasis added).

The Court now turns to *Keith II*, the summary judgment opinion upon which Plaintiff relies. *See supra* n.6.   After closing examining *Keith II*, the Court does not believe that it bears the weight that Plaintiff seeks to ascribe to it.   The factual distinctions between *Keith II* and the instant case are too many and too meaningful.   To illustrate, with respect to deliberate indifference, the Tenth Circuit in *Keith II* found fact issues about whether the defendant "failed to take reasonable steps to alleviate *known risks* within [the correctional facility]."   843 F.3d at 849 (emphasis added). Specifically, the evidence showed that "[a]lthough [the defendant] *expressed concern about the ongoing problems with* undue familiarity and *sexual misconduct*, he did not credit inmates' testimony when they raised allegations against an employee. Rather, he presumptively accepted his employees' word and designated most claims as unsubstantiated."   *Id.* (emphasis added). Moreover, the evidence showed that the warden "endorsed a policy that weighed employee

testimony more favorably than an inmate's, even when the employee refused to take a polygraph

and the inmate's polygraph results corroborated her allegations." *Id*. The evidence further showed

that "when [the accused correctional officer] failed a polygraph administered in the face of

allegations of sexual misconduct, there was no further investigation and the punishment imposed

was a mere five-day suspension." *Id*. In sum, the Tenth Circuit held that when:

> [v]iewing this evidence together with the high volume of complaints at [the
> correctional facility], the multiple complaints against individual employees, and the
> lackluster response to such complaints . . . [Plaintiff] has demonstrated a genuine
> issue of material fact about whether [defendant] acted with deliberate indifference
> to the risk of sexual misconduct by his employees. *Cf. Hovater*, 1 F.3d at 1064,
> 1068 (holding sheriff was entitled to qualified immunity where *he had no*
> *knowledge* that officer was a threat to female inmates in part because "no female
> inmate had complained of sexual misconduct by [the officer in question] or any
> other detention officer").

*Id*. (emphasis added) (fourth bracket in original).

Turning to the Complaint, the Court concludes that *Keith I* and *II* fail to support Plaintiff's

position. First, the Complaint fails to allege that Defendants Sanchez and Gonzales *knew* of sexual

assault allegations made by inmates against correctional officers *before* Plaintiff's allegation

against Defendant Padilla. In the *Keith* opinions, the court emphasized that the allegations made

in the complaint were supported by an audit report which detailed "54 incidents of sexual

misconduct and 33 incidents of undue familiarity *between 2005 and 2009* and to a *2005 lawsuit*

over strip searches . . . ." *Keith I*, 707 F.3d at 1189; *see also Keith II*, 843 F.3d at 849 (the court

"[v]iewing this evidence together with the high volume of complaints at [the correctional facility],

the multiple complaints against individual employees"). The assault at issue in *Keith* occurred in

2007, which meant that two years of incidents of sexual misconduct and a 2005 lawsuit *preceded*

that plaintiff's accusation. Here, by contrast, the instant Complaint is silent on this point; no

allegation is made that Defendants Sanchez and Gonzales (or any officer at the correctional facility

17

for that matter) ever received a complaint of sexual assault by a corrections officer against an inmate before Plaintiff made her allegation.  In addition, the *Keith* cases further emphasized the warden's lackluster response to *substantiated allegations*. *Keith I*, 707 F.3d at 1189 (emphasis added); *see Keith II*, 843 F.3d at 849.  Again, the Complaint here does not allege that Defendants Sanchez and Gonzales failed to respond to *substantiated* sexual assault claims that preceded Plaintiff's allegation.  The Complaint is simply silent on these points.

In the Court's view, Plaintiff's Complaint deploys formulaic conclusions rather than the substantial factual allegations necessary to "nudge[] her claims beyond the conceivable to the plausible." *Keith* I, 707 F.3d at 1188.  For example, the Complaint concludes that (1) "Defendants have fostered a culture that emboldens and empowers correctional officers to use their positions of power to sexually abuse" inmates, (2) assaults go unreported because victims will not be taken seriously and are afraid of retaliation, and (3) "even after reporting sexual assault allegations and harassment . . . [inmates] are often forced to remain in close contact with and under the control of their abusers." Compl. ¶¶ 94-96.[7]  But the Complaint conspicuously fails to allege that any

---

[7] In Plaintiff's response, she argues that the Complaint alleges that "Defendants failed to discipline officers at SCC for misconduct and sexual abuse."  Resp. 9.  She then cites ¶¶ 94-104 of the Complaint for support.  Even taking the facts as true and viewing them in the light most favorable to her, the Court believes that Plaintiff is arguing facts that the Complaint does not allege.  The closest Plaintiff comes to alleging that "Defendants" failed to discipline comes from ¶¶ 56, 99 and 101 where she alleges that (1)"Defendant Padilla has not been subject to adequate, if any, disciplinary action or consequences," (2) "serial offenders are further emboldened because they know that allegations against them will not be believed or taken seriously and that, like Defendant Padilla, they are unlikely to face consequences for their illegal and abusive behavior" and (3) "[t]he sexually abusive culture Defendants fostered at SCC emboldened and enabled Defendant Padilla to terrorize Ms. Martinez in her workplace for months without repercussion." Compl. ¶¶ 99, 101.  These allegations fail to specifically allege that Defendants Sanchez and Gonzales knew of complaints of sexual assault (or several complaints) *before* Plaintiff's claim and then failed to discipline officers.  As discussed below, Plaintiff first accused Defendant Padilla (and therefore first notified SCC staff) on March 29, was then immediately transferred to a different facility on March 31, and the New Mexico Department of Public Safety subsequently investigated Defendant Padilla.  Compl. ¶¶ 52-55.  These allegations do not support Plaintiff's conclusory argument that Defendants failed to discipline.  Notably lacking also are allegations that establish deliberate indifference, i.e., misconduct that occurred before Plaintiff's claim that Defendants Sanchez and Gonzales disregarded, thus allowing the assaults to occur because Defendant Padilla knew he would not be punished.  *See Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016) ("basic principals [sic] of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation." (*quoting Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (emphasis in original)).

instances of sexual assault occurred at SCC *before* she made her complaint against Defendant Padilla.  This failure demonstrates Plaintiff's inability to nudge these conclusory allegations beyond the conceivable to plausible.  Unlike in the *Keith* cases, where *numerous allegations* had been made *prior* to the incident in question and the warden had expressed concern over sexual assaults, the conclusory and threadbare allegations make it impossible to infer that Defendants Sanchez and Gonzales acted with deliberate indifference.  *See Keith II*, 843 F.3d at 848 (discussing *Gonzales v. Martinez*, 403 F.3d 1179 (10th Cir. 2005) and evidence that gave rise to an inference of deliberate indifference).  The Complaint does not speak to any specific instance (much less numerous instances) of sexual misconduct that occurred before Plaintiff made her complaint against Defendant Padilla that would give rise to an inference of deliberate indifference on behalf of Defendants Sanchez and Gonzales.  The closest Plaintiff comes are her allegations that (1) five months after the investigation into her complaint against Defendant Padilla, he was investigated again for sexual assault, (2) "numerous SCC officers have been investigated by the state police for sexual misconduct"[8] and (3) "several other women at SCC have reported Defendant Padilla for sexual abuse in the *two years since*" Plaintiff reported him.  Compl. ⁋⁋ 53-55, 102, 103 (emphasis added).

Again, these allegations do nothing to show that Defendants Sanchez and Gonzales had knowledge of misconduct (or that correctional officers posed a risk to inmates) *before* Defendant Padilla allegedly assaulted Plaintiff.  At best, these allegations show that Defendants Sanchez and Gonzales had knowledge of risks of sexual assault committed by corrections officers against inmates that arose *after* the incident in question.  Timing is dispositive here, and no non-conclusory

---

[8] As stated throughout, the Complaint does nothing to orient the reader to the temporal proximity of this allegation.

allegation in the Complaint refers to any instance of misconduct preceding Defendant Padilla's assault.

Moreover, the Complaint does not point to a policy that discounts inmate allegations nor does it allege that one even exists, let alone allege an instance of this occurring prior to the alleged assault. *See Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) ("A plaintiff must . . . identify the specific policies over which particular defendants possessed responsibility and that led to the alleged constitutional violations."). Plaintiff simply generalizes that "victims know their allegations will not be taken seriously or investigated in good faith." Compl. ⁋ 95. This is conclusory at best. *See Iqbal*, 556 U.S. at 678. Merely stating that the facility fostered a culture that allowed sexual assaults to occur, or that inmates were afraid to report assaults or forced to be in close proximity with the accused—without factual (and non-conclusory) allegations of prior instance—falls well short of adequately pleading the mental state required to support a supervisory liability claim. [9] And simply proffering allegations that other courts have found to be dispositive but then failing to plead even the basic underlying supporting facts that those courts relied on does not turn Plaintiff's allegations into a plausible claim. *See, e.g.,* Compl. ⁋ 100 ("Defendants . . . fail[ed] to maintain sufficient camera placement").

Even in the light most favorable to Plaintiff, these allegations, which appear to demonstrate SCC took her seriously, are nowhere close to *Keith II*. There, the warden endorsed a policy that favored employee testimony, even (1) when the employee refused to take a polygraph, (2) an inmate's polygraph corroborated her allegations, and (3) no further investigation was undertaken

---

[9] As Defendants Sanchez and Gonzales correctly argue, these types of allegations standing alone do not adequately state a claim. *See Whitehead v. Marcantel*, 766 F. App'x 691, 700 n.9 (10th Cir. 2019) (unpublished) ("As part of this claim, [plaintiff] alleges that some of the prison-official defendants promoted a nefarious culture that allowed others to harass inmates. This allegation is too conclusory to state a claim." *Citing Iqbal*, 556 U.S. at 678).

when the employee ultimately failed a polygraph.  843 F.3d at 849.  Here, the strength of the

factual allegations in the *Keith* cases clearly demonstrates that Plaintiff's actual fact allegations

amount at bets to a conclusory recitation of the elements of supervisory liability.  Consequently,

irrespective of Plaintiff's other arguments, once stripped of its conclusory assertions, the

Complaint fails to adequately plead deliberate indifference.  Therefore, the Court recommends the

Motion be granted on this basis.

　　　　3.  *Plaintiff's Allegations of PREA Violations, Blind Spots, Negligent Hiring and
　　　　　　Supervising, and the Failure to Screen*[10]

　　　　Apart from the contrasts to this case provided by of *Keith I* and *II*, Plaintiff argues that her

Complaint adequately states a failure to protect claim based on a theory of supervisory liability.

Beginning with PREA violations, Plaintiff contends that "Defendants knowing failed to follow

other proper [PREA] protocols and procedures, including refusing to keep prisoners' PREA

complaints and grievances confidential and protecting her from retaliation."  Resp. 9 (citing Comp.

⁋ 100).  Defendants Sanchez and Gonzales respond that this allegation is "conclusory to the extent

that they concern events prior to those described in the complaint."  Reply 6.  Specifically,

Defendants assert that "Plaintiff arguably describes with specificity non-compliance with PREA

on the part of certain SCC employees *after* the incident in question, in that the Complaint describes

potential violations of confidentiality and failure to discipline [Defendant] Padilla" buts fails to

"allege[] any specific PREA violations prior to the incident in question."  *Id*. (emphasis in original).

The Court agrees with Defendants Sanchez and Gonzales.

　　　　Regarding PREA violations, the Complaint alleges that the morning after Plaintiff made

her March 29 claim, other women at SCC were talking about the incident.  Compl. ⁋ 58.  The

---

[10] In addition to providing little help in establishing deliberate indifference, Plaintiff's allegations here have some
causation issues.  For example, the Court cannot readily see how failing to screen officers for contraband translates
into an allegation that supports a claim for failure to protect inmates from sexual assault.

Complaint further alleges that Defendant Biddle effectively breached his duty of confidentiality surrounding reports of sexual misconduct when he instructed other inmates to protect Plaintiff. *Id.* ¶¶ 61-62.  The Complaint also alleges that, when Plaintiff *arrived at the new facility after her transfer*, correctional officers knew that she had made a PREA complaint and made several comments about it. *Id.* ¶¶ 73-75 (emphasis added).  Lastly, the Complaint alleges that "Defendants fostered a sexually abusive culture by . . . failing to follow PREA protocols and procedures" and "refus[ed] to keep prisoners' PREA complaints and grievances confidential, leaving victims open to retaliation and further harassment from correctional officers and other prisoners[.]" *Id.* ¶ 100.[11]

Notably absent from the Complaint, however, are allegations of PREA violations that occurred *prior* to Plaintiff's March 29 claim that would have put either Defendant Sanchez or Defendant Gonzales on notice that the PREA was being violated.  The absence of such antecedent evidence leaves the Complaint without sufficient allegations that would give rise to a reasonable inference that Defendants Sanchez and Gonzales acted with deliberate indifference.  Also, several of the allegations involve corrections officers at a facility other than SCC, s*ee* Compl. ¶¶ 73-75, which provides Plaintiff no help with her claim against Defendants Sanchez and Gonzales. Furthermore, although the Complaint does adequately plead a claim against Defendant Biddle for violating the PREA, "Section 1983 does not authorize liability under a theory of respondeat superior."  *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (citation omitted)).  And PREA violations by corrections officers that occurred *after* the claim made against Defendant Padilla do little to establish that Defendants Sanchez and Padilla acted with deliberate indifference

---

[11] As discussed in Section III.B.1, Defendants Sanchez and Gonzales attack Paragraph 100 of the Complaint as well as others for being made collectively against all named defendants.  While the Court found that the Complaint adequately provided Defendants Sanchez and Gonzales with fair notice of the claims  asserted against them, that does not mean that paragraph 100's assertions are not conclusory or insufficient to plausibly establish deliberate indifference.

in their failure to protect Plaintiff from sexual assault.  This especially holds true when, at best, Plaintiff's allegations establish that Defendant Biddle negligently disclosed Plaintiff's complaint because he was trying to protect her and not because the disclosure was part of a culture designed by Defendants Sanchez and Gonzales to deter complaints made against officers so that assaults could happen.  Indeed, when separating allegations by count, Plaintiff only mentions the PREA in Count IV (Retaliation), which has been dismissed against Defendants Sanchez and Gonzales.  It is not within the Court's purview to reformulate Plaintiff's allegations so that they better fit her remaining failure to protect theory against Defendants Sanchez and Gonzales.

Next, Plaintiff contends that "Defendants failed to maintain sufficient camera placement around SCC, creating well known blind spots that could be exploited by officers such as Defendant Padilla."  Resp. 8.  Defendants Sanchez and Gonzales argue that, in order for Plaintiff to sufficiently plead deliberate indifference on this theory, "Plaintiff would have to allege that [they] would have to be in a position to add or reposition cameras, and that they were on notice of not just the alleged blind spots but that these blind spots created an unreasonable risk of harm to inmates."  Reply 4.  The Court agrees and concludes that the Complaint does not adequately connect Plaintiff's allegation to a theory of supervisory liability.

The allegations in the Complaint that that mention "cameras" are as follows: (1) "Defendant Padilla told Ms. Martinez that he wanted to take her somewhere where there were no cameras, such as the basement, so that he could have sex with her without getting in trouble[,]" (2) "[a]fter he rubbed his genitals against her, Defendant Padilla told Ms. Martinez that he would probably get in trouble because it had been in view of the office security camera[,]" (3) "Defendants have fostered a sexually abusive culture by . . . failing to maintain sufficient  camera placement around SCC and, upon information and belief, by purposefully erasing or failing to

preserve security footage from existing cameras," (4) "Defendants retaliated against Ms. Martinez by . . . refusing to review and preserve camera evidence that would have supported her claims[,]" (5) "[a]t all times material hereto, Defendants knew that the security camera footage from the kitchen and Defendant Padilla's office may have captured the misconduct alleged by Ms. Martinez[,]" (6) "[a]dditionally, having referred Ms. Martinez's case to DPS for investigation, Defendants knew that the security camera footage would be material to a potential criminal prosecution[,]" and (7) "[u]pon information and belief, Defendants disposed of, significantly altered, and/or failed to preserve the security camera footage in question, which would have been material evidence in any potential lawsuit."  Compl. ¶¶ 30, 36, 100, 138, 145, 147, 148.

To state the obvious, there is no allegation that Defendants Sanchez and Gonzales knew of blind spots (contrary to Plaintiff's assertion, blind spots are not even alleged), that sexual assaults previously occurred in blind spots, nor allegations that support an affirmative link between blind spots, i.e,, a custom of inadequate supervision via blind spots, and Defendant Padilla's assault. What is more, the allegations suggest that Defendant Padilla's conduct *was* caught on camera, which causes the Court to question altogether the relevance of blind spots in support of Count III. For these reasons, the Court rejects Plaintiff's assertion that the blind spot evidence helps establish her failure to protect claim.

Plaintiff's last two allegations similarly fail to nudge Count III across the line from conceivable to plausible.  Plaintiff argues that "Defendants negligently hired, trained, supervised, and retained corrections officers who commit abuse against women in NMDC custody" and that "Defendants failed to properly screen correctional officers entered SCC, which allowed them to bring special items to curry favor with prisoners."  Resp. (citing Compl. ¶ 100).  Plaintiff's allegation that "Defendants negligently hired, trained, supervised, and retained corrections officers

who commit abuse against women in NMDC custody" is perhaps the quintessence of a conclusory allegation. There is no supporting factual allegations of any sort to rescue this conclusion, much less to show that any such failure rises to the level of deliberate indifference rather than mere negligence. *See* Resp. 4 ("Liability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant, and not on negligence." *quoting Darr v. Town of Telluride*, Colo, 495 F.3d 1243, 1256 (10th Cir. 2007)). The Court agrees, concluding that nothing in the Complaint makes it plausible that Defendants Sanchez and Gonzales *knowingly* failed in their hiring practices, disregarded the risk that their failures posed, and thus allowed sexual assaults to occur.

Lastly, immediately apparent about Plaintiff's allegation of deficient screening at SCC is a glaring causation issue. *See, e.g., Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) ("affirmative link" requires "(1) personal involvement, (2) *sufficient causal connection*, and (3) culpable state of mind."). Without more, this conclusory allegation does not make it plausible that bringing special items into SCC to curry favor translates into a sexual assault, let alone support Court III's supervisor theory that Defendant's Sanchez and Gonzales failed to protect by fostering a sexual abusive culture.

At bottom, Plaintiff's Complaint as it relates to Defendants Sanchez and Gonzales is a collection of conclusory allegations. But unlike other cases heard by other courts, where additional fact allegations moved those claims from the conceivable to the plausible, Plaintiff's Complaint does not.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant's Motion be **GRANTED.**

25

**IT IS FURTHER RECOMMENDED** that Count III as to Defendants Sanchez and Gonzales be **DISMISSED WITH PREJUDICE.**[12]

**SO RECOMMENDED.**

_____
**THE HONORABLE GREGORY J. FOURATT**
**UNITED STATES MAGISTRATE JUDGE**

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

[12] Plaintiff does not request leave to amend in the event the Court grants the Motion. Therefore, the Court recommends Count III be dismissed with prejudice.