**UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

REBECCA MARTINEZ,

    Plaintiff,

v.                                                                                                   Civ. No. 19-889 JCH/GJF

CHRISTOPHER JAMES PADILLA, et al.,

    Defendants.

**ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION TO COMPEL**

THIS MATTER is before the Court upon Plaintiff's "Motion to Compel Discovery" [ECF 22] ("Motion"). The Motion is fully briefed. *See* ECF 43 (Response); ECF 45 (Reply). The Court heard oral argument on September 17, 2020, at the end of which the Court rendered its decision. ECF 49 (Order Setting Hearing); ECF 52 (Clerk's Minutes). For the reasons stated below, the Court now memorializes its decision to **GRANT IN PART AND DENY IN PART** Plaintiff's Motion.

**I. PROCEDURAL BACKGROUND**

Plaintiff alleges that Defendant Christopher Padilla, a correctional officer at the Springer Correctional Center ("SCC"), engaged in numerous instances of sexual misconduct towards her while she was incarcerated there. ECF 1-2 at 1, 4–13. In making these allegations, Plaintiff sued four defendants: (1) Defendant Padilla; (2) Defendant John Sanchez, former SCC Warden; (3) Defendant Christopher Biddle, former SCC Deputy Warden; and (4) Defendant Robert Gonzales, SCC Security Chief. ECF 1-2 at 3.

In her Complaint, Plaintiff alleged five counts: (I) "False Arrest and Seizure in Violation of the Fourth Amendment" against Defendant Padilla; (II) "Cruel and Unusual Punishment in

Violation of the Eighth Amendment" against Defendant Padilla; (III) "Failure to Protect in Violation of the Eighth Amendment" against Defendants Sanchez, Biddle, and Gonzales; (IV) "Retaliation in Violation of First Amendment" against all Defendants; and (V) "Spoliation of Evidence" against all Defendants. ECF 1-2 at 14–18.

Plaintiff filed the present Motion on March 3, 2020. ECF 22. On March 10, 2020, however, the parties stipulated to dismissing Count V with prejudice. ECF 23. Shortly thereafter, Defendants Sanchez and Gonzales moved to dismiss the remaining claims against them, Counts III and IV, and the Court granted this request. *See* ECFs 24, 36, 38. On April 22, 2020, the parties again stipulated to a dismissal with prejudice, this time with respect to Count IV as it pertained to Defendants Padilla, Gonzales, and Sanchez. ECF 32. The scope of the case has thus narrowed since Plaintiff originally filed her Motion. The only remaining claims are: (I) "False Arrest and Seizure in Violation of the Fourth Amendment" against Defendant Padilla; (II) "Cruel and Unusual Punishment in Violation of the Eighth Amendment" against Defendant Padilla; (III) "Failure to Protect in Violation of the Eighth Amendment" against Defendant Biddle; and (IV) "Retaliation in Violation of First Amendment" against Defendant Biddle.  ECF 1-2 at 14–17.

Plaintiff now requests that the Court compel Defendants to produce information and documentation that Plaintiff requested in December 2019. *See* ECF 22 at 1.

## II.  RELEVANT SUBSTANTIVE LAW

### A.  Scope of Discovery

The scope of discovery as defined by Rule 26 of the Federal Rules of Civil Procedure is familiar:

> Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense* and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

> importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added). The language of Rule 26 should be "liberally construe[d]," *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649 (D.N.M. 2007), so that trial may be "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958); *see also Equal Emp. Opportunity Comm'n v. Bok Fin. Corp.*, Civil No. 11-1132 RB/LFG, 2013 WL 12047029, at *11 (D.N.M. Jan. 25, 2013) (same). But, at the same time, the Court must avoid permitting "plaintiff to engage in a 'fishing expedition' in the hope of supporting [her] claim." *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 375 (D.N.M. 2018) (quoting *McGee v. Hayes*, 43 Fed.Appx. 214, 217 (10th Cir. 2002) (unpublished)). And "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

### B. Attorney-Client Privilege

"The attorney-client privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor.'" *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983)). The attorney-client privilege must be "strictly construed." *Trammel v. United States*, 445 U.S. 40, 50 (1980). "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995). Instead, the "communication between

a lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998).

### C. Work Product Doctrine

"The work product privilege protects against disclosure of the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.'" *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (quoting Fed. R. Civ. P. 26(b)(3)). The work product doctrine guards only against "divulging the attorney's strategies and legal impressions" and not the "facts concerning the creation of work product or facts contained within work product." *Id.* Materials protected by the work product doctrine may be subject to discovery if (1) they are otherwise discoverable and (2) the party seeking disclosure "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

### D. Inspection of Public Records Act

Under New Mexico's Inspection of Public Records Act ("IPRA"), N.M. Stat. § 14-2-1, every person has a right to inspect the public records of the state of New Mexico and its agencies. Several types of government records, however, may not be inspected, including "letters or memoranda that are *matters of opinion* in personnel files." § 14-2-1(C) (emphasis added).

The New Mexico Supreme Court has had a single opportunity to address whether an exception to the general rule permitting public record inspection also amounts to a discovery privilege in civil litigation. In *Estate of Romero ex rel. Romero v. City of Santa Fe*, 137 P.3d 611, 613 (N.M. 2006), the court answered whether a particular IPRA provision, which excepts from public inspection "law enforcement records that reveal confidential sources, methods, information or individuals accused but not charged with a crime," also created a separate civil discovery

4

privilege. *Id.* at 617; *see generally* N.M. Stat. § 14-2-1(A)(4). The court determined that IPRA exceptions are indicative of the New Mexico State Legislature's "intent to protect from disclosure" certain types of government records. *Romero*, 137 P.3d at 617. In other words, IPRA exceptions represent "vitally important public policy concern[s]" which may lead to "an immunity from discovery for some . . . materials in civil litigation." *Id.* at 618. Notably, however, the court held that such "immunity is not absolute." *Id.* Rather, "the party seeking to preclude disclosure has the burden of proving the information sought to be protected is confidential under a policy interest which may make the information immune from discovery." *Id.*

## III. DISCUSSION

Plaintiff requests that the Court compel Defendants to supplement their responses to certain interrogatories and requests for production. ECF 22. Plaintiff's six specific requests are discussed in turn.

### A. Interrogatory Number 11

1. The Parties' Arguments

Plaintiff requested that Defendants:

> identify all persons charged with the responsibility of hiring, training, and making decisions regarding the promotion and/or retention of NMCD [New Mexico Corrections Department] staff at facilities operated by NMCD *for the five years prior* to the incident in this case to the present.

ECF 22-5 at 2–3 (emphasis in original). Defendants responded:

> Defendants object to this Interrogatory, as it is irrelevant and not reasonably calculated to lead to admissible evidence. None of the Defendants in in [sic] the instant case are accused of any negligence in staffing, and they are not responsible for staffing decisions . . . NMCD states that there is a centralized screening process. Vincente Caballero is the acing [sic] section chief.

ECF 22-5 at 3.

Plaintiff took issue with Defendants' response as failing to "explain what the screening process is or what entity or office the identified individual apparently presides over." ECF 22 at 3. Plaintiff argues that the request was relevant because she alleged that Defendant Biddle (as well as Defendants Gonzales and Sanchez, neither of whom remains a party to this dispute) "violated the Eighth Amendment by creating [a] dangerous environment at SCC and thereby failing to protect [Plaintiff] from abuse." *Id.* at 4. In addition, Plaintiff argues that the interrogatory is relevant to her claims against Defendant Padilla because Plaintiff alleges that the SCC had a culture that "empowered correctional officers to use their positions of power to sexually abuse women in NMCD custody," which "emboldened Defendant Padilla, making him believe he could abuse [Plaintiff] without consequence." *Id*.

Defendants, for their part, argue that the interrogatory is no longer relevant after the Court dismissed "Plaintiff's claims for supervisory liability." ECF 43 at 6.

2. <u>The Information Sought Is Not Relevant to the Remaining Claims</u>

Discovery requests must be relevant to a party's claims or defenses. Fed. R. Civ. P. 26(b)(1). As a preliminary matter, Interrogatory Number 11 is overbroad in two ways. First, it requests the names of personnel charged with certain employment functions at every NMCD facility—not just the SCC. ECF 22-5 at 2–3. Second, the interrogatory is not limited to the time frame in which the alleged incidents took place; rather, the request extends five years prior to the relevant incidents in question. *Id.*

More importantly, Interrogatory Number 11 is not relevant to Plaintiff's claims against either of the two remaining defendants. Plaintiff has not shown how establishing the identities of all NMCD employees who were responsible for staff employment decisions—for the five years prior to the incident in question— makes it more or less probable that Defendant Padilla engaged

in the alleged sexual misconduct. Furthermore, although Plaintiff's failure to protect and retaliation claims against Defendant Biddle remain, Plaintiff has not alleged that Defendant Biddle was in any way responsible for or connected to the types of employment decisions described in her interrogatory. Therefore, the Court will deny Plaintiff's request to have Defendants supplement their response to Plaintiff's Interrogatory Number 11.

### B. Request for Production Number 10

#### 1. The Parties' Arguments

Plaintiff asked Defendants to "produce all NMCD Human Resource Manuals that were in effect at SCC from July 2014 through the present." ECF 22-5 at 8. Defendant objected to the request as irrelevant on the grounds that this case "is not an employment dispute; rather, it concerns alleged interactions between an inmate and an officer." *Id.* At oral argument, Plaintiff explained that the request was relevant because human resource manuals would provide information about how SCC officers are expected to behave and how informal discipline is applied at NMCD facilities. ECF 52 at 2.

Like Defendants' response to Plaintiff's Interrogatory Number 11, Defendants take the position that this interrogatory was rendered moot once the Court dismissed Plaintiff's remaining claims against Defendants Sanchez and Gonzales. ECF 43 at 5. And, with respect to Defendant Biddle, Defendants assert that the request is not relevant because Defendant Biddle was not responsible for disciplining Defendant Padilla. ECF 52 at 2.

#### 2. Plaintiff's Request Is Relevant to Her Failure to Protect Claim against Defendant Biddle

Because Plaintiff's Eighth Amendment Failure to protect claim against Defendant Biddle survives, the SCC's culture in place at the time of the disputed incidents in this case is relevant. It

therefore follows that human resource manuals—which often detail an institution's policies and disciplinary procedures—may be relevant.

At the same time, however, Plaintiff's interrogatory, as written, is overbroad because it requests disclosure of manuals in use at *all* NMCD facilities and for manuals in use *after* the relevant time period. Accordingly, the Court will only grant Plaintiff's motion to compel to the extent it relates to the disclosure of human resources manuals in use at the Springer Correctional Center for the three-year period that ended with the culmination of the investigation of the incident giving rise to this lawsuit.

### C. Request for Production Number 11

#### 1. The Parties' Arguments

Plaintiff sought "all documents that address the job duties and/or any restrictions that apply to correctional officers at SCC, including, but not limited to, all documents pertaining to the hiring and/or termination of correctional officers in effect at SCC at the time of the incidents at issue in this lawsuit." ECF 22-5 at 8. Defendants again objected to the request as irrelevant. *Id.* Notwithstanding that objection, however, Defendants directed Plaintiff to a website at which she could access the NMCD's policies. *Id.*

During oral argument, Plaintiff's counsel further explained that Defendant's answer to this interrogatory was insufficient because Plaintiff, upon information and belief, understood there to be documents responsive to this request that are not publicly available through the website provided by Defendants. ECF 52 at 3. When asked by the Court whether such non-public documents exist, defense counsel advised that to the best of his knowledge the only documents applicable to the request are those available through the website. *Id.*  At this point, Plaintiff's counsel stressed the fact that the request was specifically targeted at documents in place at the time

of the disputed incidents and that because the link provided only contains up-to-date documents, the policies provided may not be entirely responsive to this request. *Id.*

### 2. Defendants' Response Was Insufficient

Like Plaintiff's Request for Production Number 11, Request for Production Number 10 is relevant because Plaintiff's failure to protect claim against Defendant Biddle is alive—meaning that the SCC's culture may be relevant. Moreover, the documents described in this request directly relate to the SCC's culture. The Court further agrees with Plaintiff that Defendants' responses were insufficient because the policies identified via the website are not necessarily those in place during the time period relevant to this litigation.

Thus, the Court will order defense counsel to conduct another good faith search for documents responsive to Plaintiff's Request for Production Number 11, limited specifically to the Springer Correctional Center. The Court will further order defense counsel to file with the Court a certificate of compliance advising that the renewed search either yielded new responsive documents that have been disclosed or yielded no new responsive documents.

## D. Interrogatory Number 15 and Requests for Production Numbers 1, 2, and 8

### 1. The Parties' Arguments

This set of requests raises the issue whether an NMCD Office of Professional Standards Report ("OPS Report"), created in response to Plaintiff's allegations, is discoverable.

Interrogatory Number 15 requested:

> [e]xcept for your attorney, identify every individual with whom each Defendant has communicated about Plaintiff's allegations, including employees or supervisors of the New Mexico Corrections Department, Summit staff, and law enforcement, and please describe the form or type of such communication (i.e., orally or in writing), the date of such communication, a summary of the communication, the purpose of the communications, and whether or not it was recorded.

ECF 22-5 at 4. Defendants objected to the request on the grounds that:

> all such communications were in connection with investigations carried out by the New Mexico Department of Public Safety and the Department of Corrections' Office of Professional Standards . . . The Office of Professional Standards investigation is protected by attorney client privilege and the work product doctrine.

*Id.* In their briefing, Defendants asserted that the OPS Report was also protected by a public policy privilege created by IPRA. ECF 43 at 7–9; *see generally* N.M. Stat. § 14-2-1(C).[1]

Plaintiff takes the position that OPS Reports are not protected by the attorney client privilege because they are not created for the purpose of soliciting or delivering legal advice and because the OPS Report was not intended to be kept confidential, considering that OPS reports are sometimes disclosed to law enforcement agencies under NMCD policy. ECF 22 at 8; *see also* N.M. Dep't Corr. Pol'y 031800.[2] Plaintiff further contends that the OPS Report is not protected by the work product doctrine because it was not created in anticipation of litigation—but, instead, the report's primary function was to memorialize an investigation into "allegations of staff misconduct." ECF 22 at 10.

Plaintiff insists that the OPS Report is discoverable under IPRA. *Id.* at 10. Under New Mexico case law, Plaintiff says, IPRA does not in and of itself create a discovery privilege. *Id.* at 11–12. Instead, Plaintiff continues, IPRA is more properly interpreted to act as a guide to courts in determining whether a policy interest exists that may make certain materials immune from discovery. *Id.* at 12. Plaintiff concludes that because "Defendants have provided no explanation of a public policy that would favor keeping the OPS [R]eport confidential," IPRA does not protect it from disclosure. ECF 45 at 5.

---

[1] Armed with the knowledge of the OPS Report's existence, Plaintiff also seeks the report on the basis that it is responsive to her Requests for Production Numbers 1, 2, and 8. ECF 22 at 5. Broadly speaking, these requests sought documents created in response to the incident at issue and documents held in Plaintiff's inmate file. *See* ECF 22-5 at 5–7.

[2] NMCD policies may be found at https://cd.nm.gov/policies/.

10

2. <u>The Non-Opinion Portions of the OPS Report Are Discoverable</u>

The OPS Report is not protected by either the attorney client privilege or the work product doctrine. "The attorney-client privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor.'" *In re Grand Jury Proceedings*, 616 F.3d at 1182. Similarly, "[t]he work product privilege protects against disclosure of the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.'" *Resolution Trust Corp.* 73 F.3d at 266. The OPS Report, reviewed by the Court *in camera*, does not contain confidential communications between a client and a lawyer. Although the OPS Report is shared with a member of the NMCD's Office of General Counsel, the report is created by a non-lawyer for consumption primarily by other non-lawyers.

The OPS Report was not made with the intention of seeking legal advice. NMCD Policy 031801(E) ¶ 16(a)-(c) identifies three types of cases in which an OPS report must be shared with certain NMCD personnel: (1) Prison Rape Elimination Act ("PREA") cases; (2) use of force ("UOF") cases, and; (3) equal employment opportunity cases. Of the three, only EEO cases require consultation with the NMCD Office of General Counsel. N.M. Corr. Dep't Pol'y 031801(E) ¶ 16(a). In contrast, PREA cases (of which the OPS Report is most readily classified as)[3] do not require consultation with a member of the NMCD Office of General Counsel and instead require consultation only with a "designated PREA subject matter expert." *Id.* At oral argument, defense

---

[3] Broadly, PREA was enacted to establish "a zero-tolerance standard for . . . prison rape." 34 U.S.C. § 30302(1). "Rape" as defined in PREA includes "sexual fondling of a person, forcibly or against that person's will." 34 U.S.C. § 30309(9)(A). "PREA Cases," within the context of NMCD policy, are those in which a PREA "subject matter expert" must determine whether PREA violation occurred. N.M. Corr. Dep't Pol'y 031801(E) ¶ 16(a). Because the OPS Report details an investigation into an alleged sexual assault, the report is best classified as a "PREA case" under NMCD policy.

11

Case 1:19-cv-00889-JCH-GJF   Document 56   Filed 09/28/20   Page 12 of 15

counsel confirmed that the SCC's PREA subject matter expert was not a lawyer. ECF 52 at 3–4. Accordingly, the Court finds that the OPS Report is not protected by the attorney client privilege or the work product doctrine because the report was not created to obtain legal advice or in anticipation of litigation.

Defendants' alternative ground for nondisclosure is that exceptions identified in IPRA provide a basis for nondisclosure. The relevant provision reads: "[e]very person has a right to inspect public records of this state *except*: . . . letters or memoranda that are *matters of opinion* in personnel files." N.M. Stat. § 14-2-1(A) (emphasis added). Without reaching whether that exception to IPRA's general rule of disclosure equates to a discovery privilege, the Court, having reviewed the OPS Report, has found only a few sentences that may fairly be considered "opinion." The Court, therefore, will order Defendants to produce the OPS Report with the following redactions (referencing the OPS Report's pagination):

- Page 20—the entire sentence beginning with the words: "The administrative investigation."
- Page 21—the portion of the first sentence of the first paragraph beginning after the comma.
- Page 21—the entire first sentence of the fourth paragraph.[4]
- Page 21—the entire fifth paragraph.

### E. Request for Production Number 15

#### 1. The Parties' Arguments

Plaintiff sought "NMCD policies, practices, trainings, or guidelines in place at the time of the incidents at issue in this lawsuit pertaining to the introduction of contraband by NMCD staff

---

[4] Note that this redaction is in addition to those identified during oral argument. The Court inadvertently omitted to include this excerpt in its discussion of permitted redactions. ECF 52 at 4.

into NMCD facilities." ECF 22 at 6.[5] Defendants objected to the request as irrelevant because Plaintiff did not allege that Defendant Padilla ever attempted to introduce contraband into the SCC. *See* ECF 22-3 at 3.

Plaintiff maintains that the request is relevant because it is connected to Plaintiff's allegation that Defendants "fostered [a] culture of abuse" at the SCC which was, in part, due to the practice of "failing to properly screen correctional officers entering SCC, allowing them to bring special items to curry favor with certain prisoners." ECF 22 at 6; ECF 1-2 ¶ 100(c). Accordingly, Plaintiff says, "introduction of contraband into NMCD facilities is directly relevant to Plaintiff's claim that" Defendant Biddle "failed to protect her from abuse when they created a dangerous environment at SCC through acts and omissions outlined in the Complaint." ECF 22 at 6.

2. The Documents Sought Are Not Relevant

Although the scope of discovery is broad, the Court is not required to allow Plaintiff to engage in a "fishing expedition" with the hope that something will turn up to support her claim. *See S.E.C. v. Goldstone*, 301 F.R.D. 593, 643 (D.N.M. 2014). Here, Plaintiff has not alleged that Defendant Padilla ever tried to smuggle contraband into the SCC with the hope of currying favor with any inmate—let alone Plaintiff. Moreover, it is unclear to the Court how—if Defendant Padilla is not alleged to have brought contraband into the SCC—this implicit policy of allowing correctional officers to bring contraband into the facility relates to Defendant Biddle's alleged failure to protect Plaintiff from Defendant Padilla. Thus, the Court will deny Plaintiff's motion to compel Defendants to provide documents responsive to Plaintiff's Request for Production Number 15.

---

[5] Because the parties sufficiently briefed this issue, the Court did not separately question them about it at oral argument.

**F. Rule 37 Sanctions**

Finally, Plaintiff requests an award of her reasonable fees pursuant to Rule 37(a). ECF 22 at 13. Because the Court grants Plaintiff's Motion in part and denies it in part, the Court "*may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(c) (emphasis added). Exercising its discretion and finding that each side to this Motion had defensible legal positions, the Court will deny Plaintiff's request, with each party to bear their own expenses.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion [ECF 22] is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiff's Interrogatory Number 11, Request for Production Number 15, and request for fees are **DENIED**.

2. Plaintiff's remaining requests are **GRANTED** in that, **no later than October 2, 2020**, Defendants shall:

    a. Produce human resource manuals in use at the **Springer Correctional Center** for the three-year period that ended with the culmination of the investigation of the incident that gave rise to this lawsuit;

    b. Conduct a good faith search for documents responsive to Plaintiff's Request for Production Number 11, limited specifically to the **Springer Correctional Center**. Defense counsel shall also file with the Court a certificate of compliance advising that the renewed search either yielded new responsive documents that have been disclosed or yielded no new responsive documents.

    c. Produce the OPS Report with the following redactions (referencing the Report's pagination):

        i. Page 20—the entire sentence beginning with the words: "The administrative investigation."

      ii. Page 21—the portion of the first sentence of the first paragraph beginning after the comma.

      iii. Page 21—the entire first sentence of the fourth paragraph.

      iv. Page 21—the entire fifth paragraph.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE